ELIZABETH SCHLAEFER and CHARLES F. SCHLAEFER, by their guardian, *vs.* PETER CORSON and others.

The mother of the plaintiffs, was entitled, under the will of her deceased husband, to the income of his estate until she should again marry, when the whole estate was to vest in the plaintiffs. She having married W. permitted him to collect the rents belonging to the plaintiffs. Part of these he deposited in a bank, and the balance he used in his business. Under an arrangement between the mother, acting as guardian of the plaintiffs, and W. he purchased certain premises for the plaintiffs, paying towards the same $4700 of their money in his hands, and assuming the payment of a mortgage of $10,000 then on the premises, and took the title in his own name, but for their benefit.

*Held,* 1. That there was a resulting trust in favor of the plaintiffs.

2. That W. having, as the agent of his wife, received the rents belonging to the plaintiffs, he was their trustee, and they might follow the fund into his hands, and into any property in which he might invest it.

3. That W. being insolvent, it did not lie with his creditors to say that the premises should be appropriated to pay their debts because the mother was liable as guardian.

4. That the equity of the plaintiffs was the oldest, and superior to that of a mere judgment creditor of W. who took his judgment as a means to obtain payment of a debt, and not by way of security for advances made upon the faith of the judgment as security.

APPEAL by the defendants from a judgment entered upon the findings of the judge before whom this action was tried without a jury.

The action was brought by the plaintiffs, to recover certain premises described in the complaint, which they claimed as equitable owners, and upon which the defendants, Corson and Shields, claimed a lien as judgment creditors of Christopher Wildberger, the holder of the legal title thereto. The court found the following facts, viz: That the plaintiffs are the only children of Charles F. Schlaefer, late of the city of New York, deceased, and infants under the age of twenty-one years. That on the 1st day of October, A. D. 1866, at the city of New York, the above named Frederick Kochert was, by an order of this court, duly appointed guardian of the plaintiffs, for

Schlaefer *v.* Corson.

the purposes of this action. That the above named Charles F. Schlaefer, the father of these plaintiffs, at the time of making his last will and testament, as hereinafter set forth, and also at the time of his death, was seised in fee simple and actually possessed of the following described real estate in the city of New York; namely, numbers 9, 15, 21 and 59, Avenue A, in the city of New York; and also numbers 293 and 295 Twelfth street, in the city of New York. That the said Charles F. Schlaefer did on or about the 28th day of September, 1853, duly make and publish his last will and testament in writing, duly executed and attested as required by law, to pass real estate, wherein and whereby he devised all the income of his real estate unto his widow, Caroline Schlaefer, the mother of the plaintiffs, for and during her natural life, so long as she remained his widow, and upon her death or re-marriage then unto his children and their heirs, in equal proportions, share and share alike, subject, nevertheless, to the dower of the said widow in the same. And also by the said last will and testament, appointed the said Caroline Schlaefer, the mother of the plaintiffs, and Jacob J. Rosenstein, executor and executrix of his will and the guardians of the said plaintiffs, and that both duly qualified as such. That on or about the 28th day of September, 1853, the said Charles F. Schlaefer died, without altering or revoking his said will, and that on the 15th day of October, 1853, the said will was duly proved before the surrogate of the county of New York, as a will of real and personal estate, and recorded. That on or about the 28th day of March, 1860, Caroline Schlaefer, their mother, and widow of the said Charles F. Schlaefer, intermarried with the defendant Christopher Wildberger. That since the 28th day of March, 1860, Christopher Wildberger has collected all the rents and received the whole of the income from the said real estate herein before described, and of which the said Charles F. Schlaefer died

seised. That he has thus collected and received about the sum of $30,000 of such rents. That before the 29th day of April, 1862, the said Christopher Wildberger, had thus collcted about the sum of $6000 of said rents, above taxes, insurance, interest, expenses, &c. That on the said 29th day of April, 1862, the said Christopher Wildberger agreed with the said Caroline Wildberger, formerly Caroline Schlaefer, the testamentary guardian of the plaintiffs, as aforesaid, to purchase for. the sole benefit of the plaintiffs, and as an investment and provision for them, the premises now known as number 88 Second Avenue, in the city of New York. That, in furtherance of said agreement, the said Chistopher Wildberger, upon the said 29th day of April, 1862, purchased the said above described premises, but took a conveyance thereof to himself instead of to the plaintiffs, in order, as he supposed, to facilitate the subsequent mortgaging of the said premises; that in the said conveyance he was, by mistake, described as Christian Wildberger, and that the said conveyance is duly recorded. That the said conveyance was so taken. in the name of the said Wildberger without the knowledge or consent of the plaintiffs. That the whole sum paid for the above described premises at the time of the said purchase was $14,750, whereof $4750 was paid in cash, and the remainder was secured by a mortgage of the premises; of the said cash payment, $1500 was borrowed, and subsequently repaid from the rents collected by the said Wildberger from the plaintiffs' property, and the remainder was paid down from rents previously collected from the said property by the said Wildberger. That the said Wildberger did not, from his own funds, pay any of the consideration of the said purchase. That on or about the 8th day of August, 1865, the defendant, Christopher Wildberger, by and under the name of Christian Wildberger, confessed a judgment in favor of the defendants, Peter R. Corson and Edward N. Shields, for the sum of

Schlaefer *v.* Corson.

$3464.54, and that since that time he has confessed two other judgments in favor of the same parties for a large sum of money. That executions have been issued upon said judgments to the sheriff of the city and county of New York, and that under said executions the said sheriff has advertised for sale all the rights, title, and interest of the said Christopher Wildberger to the said above described premises, number 86 Second Avenue. That the consideration for the indebtedness for which the said judgments were confessed as above set forth, in each case arose since the 1st day of January, 1865. That on or about the 2d day of April, 1866, the said Christopher Wildberger, and Caroline his wife, for the nominal consideration of $20,000, made a conveyance under their hands and seals, and duly acknowledged, of the said premises, number 86 Second Avenue, to the defendant Louisa Segar, wife of Nicholas Segar, which said conveyace is recorded in the office of the register of the city and county of New York. That the said last mentioned conveyance was made without any consideration, and none whatsoever was paid or given therefor, and the said conveyance was made simply for the purpose, of changing the apparent title to the said premises, and without the knowledge or consent of the plaintiffs. That all the rents so collected by the said Christopher Wildberger as aforesaid, except those invested in the said premises, number 86 Second Avenue, were used by him in his business and have been totally expended and lost. And the said Wildberger is insolvent and possessed of no property except the right to a stand in Washington market of the value of about $1500. That the said Wildberger has not paid over or accounted to the plaintiffs, or to any person in their behalf, for any portion of the rents and moneys of the plaintiffs so collected by him as aforesaid.

At the request of the defendants Corson and Shields, the judge also found the following facts, viz : That at the

time of his marriage, Wildberger was in business as a butcher, and continued in such business for several years after his marriage ; that as he collected the rents from the property of Charles F. Schlaefer, deceased, between the marriage and the purchase of the premises, he used them all in his business, except the sum of $1500, with which he purchased a market stand, still held by him, and the sum of $1500, which he deposited in the Bowery Savings Bank. That prior to the purchase of these premises, Wildberger had collected the sum of $6000 of rents, of which sum $4000 belonged to the plaintiffs and $2000 to his wife. That the mortgage upon the premises in suit which stood upon it at the time of its purchase, was not paid off until about a year and a half after the purchase, when a new mortgage was given upon the property for the same sum at a lower rate of interest. That Jacob J. Rosenstein, executor and co-guardian with Mrs. Wildberger, had never performed any of his duties concerning the estate of the deceased, nor paid any attention to the same. That the plaintiff Elizabeth Schlaefer was nineteen years of age on the 30th day of April, 1866, and the plaintiff Charles F. Schlaefer was sixteen years of age on the 17th day of July, 1866.

The justice found as conclusions of law : That through the agreement between the said Christopher Wildberger and the said Caroline Schlaefer, that the said premises, No. 86 Second avenue, should be purchased for the benefit of the plaintiffs, and by the employment of their funds in said purchase, the plaintiffs became, and now are, the equitable owners of the said premises. That the said Christopher Wildberger, as against the plaintiffs, never acquired, and now has no right, title, or interest in or to the said premises. That the said defendants Peter R. Corson and Edward N. Shields, by or through the said several judgments in their favor, against the said Christopher Wildberger acquired no right in or to the said prem-

ises, against the plaintiffs, nor as against them did the said judgments become a lien upon said premises, and the plaintiffs were entitled to have the same conveyed to them free and clear of all lien or incumbrance from or because of the said judgments. That the defendants Caroline Segar and Nicholas Segar, did not acquire, by means of the said conveyance to the said Caroline Segar, any rights in the said premises, adverse to those of the plaintiffs, and the plaintiffs were entitled to a conveyance to them of the said premises, free and clear of any lien, claim or charge from or on behalf of the said defendants, Nicholas and Caroline Segar. That the plaintiffs were entitled to judgment in their favor; that the said defendants Christopher Wildberger and Caroline his wife, execute, acknowledge, and deliver to the plaintiffs, a proper deed of conveyance in due form of law, of all their right, title and interest, in and to the said above described premises, No. 86 Second avenue, in the city of New York, which said deed should contain covenants against the grantors' own acts, and that the said Louisa Segar and Nicholas Segar, her husband, also in like manner execute, acknowledge and deliver to the plaintiffs, a proper deed of conveyance in due form of law, of all their right title and interest in and to the said premises No. 86 Second avenue, as above described, which said deed should contain covenants against the grantor's own acts, and that the said conveyance to the said Christopher Wildberger, under the name of Christian Wildberger, of the said premises, be declared to have been a conveyance for the sole use, benefit and behoof of the plaintiffs, and the said conveyance, by the said Christopher Wildberger, and Caroline his wife, to the said Louisa Segar, be declared null and void, as against the said plaintiffs, and that the said judgments in favor of the defendants Peter R. Corson and Edward N. Shields, be declared no liens, and of no effect, against the said described premises, 86 Second avenue, and that the said defendants Peter R. Corson and Edward

N. Shields, execute, acknowledge and deliver to the plaintiffs, a proper instrument of release in due form of law, releasing to the plaintiffs all claim, demand, interest and lien, whatsoever, which they or either of them might have, by reason of the said judgments, against the said premises, or against the plaintiffs, and discharging the said premises from the lien of the said judgment, and that the sheriff of the city and county of New York be ordered and directed to cease and discontinue all proceedings for the enforcement or collection of the said judgments, and the executions issued thereon, by the sale of the said property, and from, in any manner, interfering with the said property, under the said executions, and that the defendant Christopher Wildberger account to the plaintiffs for all the rents collected by him from the said real estate, whereof the said Charles F. Schlaefer died seised, after deducting one third of the annual amount thereof as the dower of the said Caroline Wildberger, formerly Caroline Schlaefer, and that judgment be duly entered against the said Christopher Wildberger, in favor of the plaintiffs, for whatever amount might be found due and owing to the plaintiffs on such accounting, and that the plaintiffs recover of the defendants the costs of this action.

Judgment being entered accordingly, in favor of the plaintiffs, the defendants appealed.

*Douglass Campbell,* for the appellants. I. The only plausible ground for the claim of the plaintiffs to the property in question, rests upon the familiar equity principle of following trust money into land. Any claim to the property based solely upon the agreement between Wildberger and his wife to purchase the property for the plaintiffs, would be without foundation either in principle or authority. The agreement was by parol, which never can, alone, establish an interest in land. (*Sturtevant* v. *Sturtevant,* 20 *N. Y. Rep.* 39.) But it is allowed as evidence to

Schlaefer *v.* Corson.

establish resulting trusts when coupled with the fact of the use of the money of others in the purchase of property; the use of the money creates the trust; a parol agreement only establishes the intention of the parties, or proves the ownership of the money, and is, therefore, admissible as evidence in equity—a trust arising *ex contractu* cannot be established by parol. You can only prove by parol the facts from which a trust arises by construction of law. (2 *John. Ch.* 409. 2 *Verm. R.* 627, *&c.*) It is apparently held in *Siemon* v. *Schurck,* (29 *N. Y. Rep.* 598,) that to raise a resulting trust, it is not necessary that the money should belong to the *cestui que trust,* claiming the property, but it may belong either to the *cestui que trust,* or to the party to the agreement, other than the holder of the legal title. But in every case where a constructive or resulting trust has been sustained, including those relied upon by the respondents, the whole purchase money, if the whole property was claimed, belonged to the *cestui que trust* or to the person making the agreement, other than the holder of the legal title. (*Siemon* v. *Schurck,* 29 *N. Y. Rep.* 598. *Day* v. *Roth,* 18 *id.* 448. *Lounsbury* v. *Purdy, Id.* 515.) If all the money invested belonged to the children, or to their mother, and an agreement had been made between Wildberger and wife to buy this property for them, and no superior equities or creditors had intervened, this case might come within the principle of those cited above, relied on by the respondents, but no such state of facts existed. In fact the evidence given was simply of an agreement to purchase this property as an investment for the money of the plaintiffs. Wildberger's direct-examination in behalf of the plaintiffs shows this. There was no agreement to invest Mrs. Wildberger's money for them, nothing but their own; that, therefore, can alone be followed, and the parol evidence of this agreement was admissible, if at all, only to prove a resulting or constructive trust, so far as their money furnished the consideration,

and upon the cross-examination of Wildberger, the fact was elicited of the exact origin and ownership of the purchase money, rendering the testimony of the agreement so far valueless.

II. The claim of the plaintiffs, if admitted, and if no superior equities intervened, would amount only to a lien upon the premises, for their money, with interest. Their money furnished but a portion of the consideration paid in cash. Wildberger had collected from the rents $6000, in all, prior to this purchase, of which $4000, by the will, were given to the plaintiffs, and $2000 to his wife. He paid for this property $4750 in cash. To make up this sum, he took from the savings bank $1500, which he had deposited when collected; he withdrew from his business $1750, which he had invested in that, and borrowed $1500. He had invested $1500 of the rents in a market stand, which he still owns. 1. The money borrowed cannot be followed by the plaintiffs, although subsequently repaid from the rents. There is no evidence that it was borrowed with that intent or understanding, as in the case of *Lounsbury* v. *Purdy*, (18 *N. Y. Rep.* 515.) When borrowed, Wildberger was liable for it; it was his money, and the plaintiffs to that extent have no trust in the land. (*Rogers* v. *Murray*, 3 *Paige*, 390, 398. *Jaques* v. *Marquand*, 6 *Cowen*, 497. *Jackson* v. *Moore*, *Id.* 706, 726. *White* v. *Carpenter*, 2 *Paige*, 238. *Botsford* v. *Burr*, 2 *John. Ch.* 409. 32 *Penn. R.* 371. 2 *Washburn on Real Prop.* 175. 5 *John. Ch.* 1.) 2. The money withdrawn by Wildberger from his business cannot be followed by the plaintiffs. He was doing a large business; as he collected the rents, he invested them in his business, and thence drew $1750 to make this purchase. As between Wildberger and these plaintiffs, perhaps they could follow money into his business and demand profits, &c. Such was the case of *Docker* v. *Somes*, (2 *Mylne & Keen*, 664.) But as against Wildberger's creditors they cannot show that their identical money was withdrawn

Schlaefer v. Corson.

and went into this property, and therefore can no longer follow it. It became mixed with his own money, industry and skill. (*Barlow* v. *Yeomans*, 50 *Barb*. 187. *Kip* v. *Bank of New York*, 10 *John*. 63. *Willett* v. *Stringer*, 17 *Abb*. *Pr*. 152. *Hart* v. *Bulkley*, 2 *Edw*. *Ch*. 70. *Story's Eq*. 1259. *Lewin on Trusts*, 205, *Law Lib*. *Thomson's Appeal*, 22 *Penn*. *R*. 16.) 3. Wildberger collected but $4000 belonging to the plaintiffs; they lived with, and were supported by him during the two years, and an allowance from that sum should be decreed for their support, of which the defendants should receive the advantage by deducting it from the plaintiffs' lien. (*a*.) Mrs. Wildberger, their guardian, had the right to expend their money for their support. (*Thompson* v. *Brown*, 4 *John*. *Ch*. 645. *Clark* v. *Montgomery*, 23 *Barb*. 464. 2 *Kent's Com*. 191. *Toller on Ex*. 332.) (*b*.) Courts of equity may decree an allowance for past time. (*Matter of Bostwick*, 4 *John*. *Ch*. 104, 105. *Wilkes* v. *Rogers*, 6 *John*. 566, 594. *Billingsley* v. *Critchet*, 1 *Brown's Ch*. 268, 269. (*c*.) What chancery can command to be done, will be approved when done. (*Gilb*. *Eq*. 11. 2 *Eq*. *Cases Ab*. 733, *n*. *Wilkes* v. *Rogers*, 6 *John*. 581.) Whether any, all, or none of these reductions are allowed from the $4000, the plaintiffs are entitled to but a lien upon the premises, for the amount of their money employed in the purchase, with interest, or at least only a trust *pro tanto*, (*Lewin on Trusts*, 648, 5th ed; 8 *Vesey*, 150; 17 *id*. 48,) and cannot have even this, since the definite proportion of their money cannot be traced. (*McGowan* v. *McGowan*, 14 *Gray*, 122; *n*. 15 *Wend*. 647. 2 *Washburn*, *R*. *P*. 174.)

III. The defendants Corson and Shields have a claim on this property to the extent of their judgments, superior in equity to that of the plaintiffs. They gave credit to Wildberger upon the belief in his ownership of this property; he held the legal title, occuped it as owner, with the knowledge of the plaintiffs and Mrs. Wildberger, and

represented himself as owner. 1. The case chiefly relied upon by the plaintiffs, establishes this. (*Siemon* v. *Schurck,* 29 *N. Y. Rep.* 598.) The question was of sustaining a trust against creditors of the trustee, says Judge HOGEBOOM, delivering the principal opinion : " We may, therefore, without doing violence to the language of the statute, except this case from its operation, in accordance with the manifest equity of the transaction, for there is nothing to indicate in the slightest degree, but every thing on the contrary, to repel the presumption, that Youngs (the trustee,) obtained any credit with the plaintiff in the judgment growing out of his supposed ownership of the property in question." In *Sieman* v. *Austin,* (33 *Barb.* 9,) the same case, Judge EMOTT, says : " There is no fraud or injustice to the creditors of Youngs, for the property never belonged to the debtor, nor did he obtain credit, much less this particular debt upon its possession." 2. A purchaser or mortgagee from Wildberger, would be protected against a secret trust like this set up by the plaintiffs, both by statute and common law. Having given credit on Wildberger's ownership, we are in like position. (*Caldwell* v. *Bartlett,* 3 *Duer,* 341, 373. 12 *N. Y. Legal Observer,* 201.) We occupy the position of bona fide purchasers, standing on very different ground from Wildberger. (*Root* v. *French,* 13 *Wend.* 570. *Williams* v. *Tilt,* 36 *N. Y. Rep.* 319. 2 *John. Ch.* 48.) In analogous case of negotiable paper, where a bona fide purchaser is protected, giving credit on the paper, makes one a bona fide purchaser. (*Coddington* v. *Bay,* 20 *John.* 637. *Stalker* v. *McDonald,* 6 *Hill,* 93.) Says Chancellor Walworth, (6 *Hill,* 96,) " The principle of protecting a bona fide purchaser of negotiable paper, in law is derived from the doctrines of the courts of equity." ·This makes the analogy complete. And in regard to real estate, the principle is laid down in *Brace* v. *Duchess of Marlborough,* 2 *P. Wms.* 491, 494.) When stating that a judgment is not a lien on land against prior equities, &c. it says,

Schlaefer *v.* Corson.

that this is because credit was not given on the land, but where it was so given, as in the case that first mortgagee lends a further sum on a judgment or statute, he shall take and hold against a mesne mortgage of which he was ignorant, because it is presumed he lent on the judgment as a lien on the land. All the cases cited by the plaintiffs, to show that prior trusts are preferred to judgments, are those where a prior equity has been preferred to the judgment of a general creditor, whose debt was incurred without reference to the trust property, and giving no credit upon it. Judge Thompson, in his opinion, in the case of *Lane* v. *Ludlow*, cited in *Arnold* v. *Patrick*, (6 *Paige*, 316,) as settling the law of this state, says : "And the reason sometimes assigned, why courts of equity will establish an agreement to sell land, against a judgment creditor is, that the judgment, although a lien, is not a specific lien on the land, that is the creditor did not go on the security of the land, but trusted to the general credit of the debtor and his estate. And in equity, general creditors are considered bound by a particular equity, and are not so much favored as one who has obtained a specific lien, on the faith of which he advanced his money."

IV. The plaintiff Charles F. Schlaefer should not in equity be allowed to assert a claim to this property as against the defendants Corson and Shields. He knew, as he testified, that this property was purchased for him, and that it stood in the name of Wildberger, knew all the circumstances of the purchase, and yet when Corson, from exceeding prudence, before trusting Wildberger, asked the plaintiff who owned the house, he deliberately deceived him by saying that Wildberger did. He has been guilty of fraud and can have no redress. (*Story on Equity*, 389, 1284, *a. Wendell* v. *Van Rensselaer*, 1 *John. Ch.* 344. *Storrs* v. *Barker*, 6 *id.* 166.) And infancy, like coverture, is no excuse ; infancy is a shield, but the infant must not carry shield and sword. (*Story on Eq.* 385. 1 *Fonb. Eq. Bk.*

ch. 1, § 3. *Hunden* v. *Cheney*, 2 *Vern*. 150, 151. *Lewin on Trusts, p.* 660, 5th ed. 1 *Story Cir*. 478. *Bingham on Infancy, p.* 113, n. 6.) In *Siemon* v. *Schurck*, (29 *N. Y. Rep*. 612,) a case of enforcing an equitable trust for an infant plaintiff, the court remarks that the deed was taken absolutely to Youngs without the knowledge or consent of the infant plaintiff, a statement which would be absurd if an infant cannot have knowledge, or give consent in equity, and if the knowledge and consent of an infant is of no consequence.

V. It is clearly inequitable for the plaintiffs to take this property, the only fund for the payment of the defendant's debt, until they have exhausted their remedy against the executors. Mrs. Wildberger and Mr. Rosenstein, executrix and executor, are liable to account for all the rents of the property devised by Schlaefer, with profits, if such have been earned. If Rosenstein has permitted the estate to be wasted, he is liable. (*Lewin's Law of Trusts and Trustees, p.* 316. *Styles* v. *Guy*, 1 *Mac. & Gar*. 422. *Scully* v. *Delaney*, 2 *Ir. Eq*. 165.) Both are presumed amply able to respond, there being no evidence of their inability. The plaintiffs have made no attempt to recover from them, and should not, in equity, be allowed to seek their remedy in this fund on which we have a lien, until they have exhausted their remedy against the executors, upon whom we have no claim. (*Hayes* v. *Ward*, 4 *John. Ch*. 132. *Lanoy* v. *Athol*, 2 *Atkyns*, 446. 1 *H. Black*. 150. *Story's Eq*. § 642. *Evertson* v. *Booth*, 19 *John*. 492.) Wildberger's position is no worse than if he had borrowed from his wife $4000 of the rents belonging to her wards. By collecting so much rent, he simply became a debtor to that amount. If a man borrows trust money from a trustee, uses it in his business, invests it in land, which rises in value, there is no principle by which the *cestui que trust* can follow that money and demand the land, unless the trustee is

unwilling or unable to account for the trust money, himself making up the sum which he has lent.

VI. If a loss ensues, it should fall upon the plaintiffs, rather than upon the innocent defendants Corson and Shields. The children represent their father, from whom they inherit a large property, accumulated by no labor of theirs. He left this property in charge of persons appointed by himself; chose to require no security; held them out to the world as worthy of confidence; and by means of their laches, the defendants were led into trusting Wildberger, as the owner of this property. As the children represent their father, the loss, if one is necessary, could fall on no one with less hardship. It is but carrying out the well known principle, that where one of two innocent persons must suffer by the fraud of a third, he who enabled the third person to commit the fraud, must suffer the loss. (*Lickbarrow* v. *Mason*, 2 *Term. R.* 63. *Root* v. *French*, 13 *Wend.* 572.) In any event, the children will lose but a part of the income of their property. The principal remains untouched. From their father's will, giving his widow all the rents of the property while she remained unmarried, and providing that then two thirds should go to the children, it is evident that he desired only to secure them a support, and guard against the possible evils to them of an unfortunate second marriage. The children have been supported; have lived with their mother, as if she had remained a widow, and the intention of the testator has been fulfilled.

VII. The plaintiffs have no right of action against Wildberger. He occupies no relation of debtor or trustee to them. The rents of the testator's property belonged to the guardians, Mrs. Wildberger and Mr. Rosenstein, until their duties ceased. (*Quick* v. *Staines*, 1 *Bos. & Pul.* 293. *Toller on Ex.* 136. *Muir* v. *Trustees, &c.* 3 *Barb. Ch* 477. 3 *R. S. 5th ed.* 226.) The plaintiffs can then call the guardians to an account. Wildberger, by collecting the

rents, and using them in his business, with the consent of
his wife, became a debtor to her and Rosenstein, as if he
had borrowed so much money. If after calling the guar-
dians to account, unsuccessfully, the plaintiffs had a
remedy against Wildberger, it would be as subrogated to
the right of·the guardians to pursue their debtors; they
then would ·be simple creditors of Wildberger, and, as
such, postponed to the defendants Corson and Shields,
who are judgment creditors. The relation between Wild-
berger and the plaintiffs is not changed, by his parol agree-
ment to purchase this property, as an investment for the
money which he owed the guardians, and they owed the
plaintiffs. Such a parol agreement cannot establish a
valid trust in their favor. If he had purchased the prop-
erty, and had the title taken to Mrs. Wildberger, he would
have been discharged from his debts, and the plaintiffs
might have claimed the property from her. But he has
not paid his debt by taking this title to himself; if the
house burned down, he would still owe the debt. Even if
we considered Wildberger as a debtor to the plaintiffs to
the amount of $4000 at the time of this purchase, and that
he bought this property, intending to hold it for them,
and thus pay off the debt, they being minors would not be
compelled to accept the property; so the debt would not
be paid. His making a charge to them in his accounts
of $4750 paid for them, for this house, does not make the
purchase money theirs, so as to create a trust in their favor.
"The mere charge of the payment to the third person who
sets up the trust, will not be sufficient; an actual pay-
ment, or an actual loan of the money, at the time, is indis-
pensable." (*Per Chancellor Kent, Steere* v. *Steere,* 5 *John.
Ch.* 1.) As the purchase money, therefore, did not belong
to the plaintiffs, but (except what belonged to Wildberger
himself) was owed by him to the guardians, no trust
could result to the plaintiffs on the theory of the employ-
ment of their money. And, on any other theory, the

parol agreement is insufficient to establish a trust. A trust, resting on an agreement to buy and hold land for another, is not one arising by implication or construction of law, but arises *ex contractu*, and is, therefore, within the statute of frauds, and also an express trust forbidden by the · Revised Statutes. It is not a. resulting trust. The only resulting trusts are : First. Where land is purchased fraudulently by a person in a fiduciary relation ; here no fraud is charged or proved. In no case will the grantee be deemed a trustee, if he used no fraud in getting his title, although he verbally promised to hold the land for the grantee. (*Brown on Statute of Frauds. Leman* v. *Whitley*, 4 *Russ. Ch.*) Second. Where the property is conveyed with a trust, expressed as to a portion, and the remainder undisposed of. Third. When the consideration is paid by one person, and the conveyance taken to another. (*Loyd* v. *Spillet*, 2 *Atk.* 150. 2 *Washburn on R. P.* 172, *and cases cited hereafter.*) It is claimed, as a resulting trust, under the third class. Of course, there is no resulting trust to Mrs. Wildberger, (assuming that she paid the consideration money,) for Wildberger took the title with her knowledge and assent, and the case is met by the Revised Statutes. (*5th ed. vol.* 3, *p.* 15.) But it is claimed that a trust resulted to the children, (assuming, still, that the consideration money belonged to Mrs. Wildberger, and was not a mere·debt owed to her by her husband,) by the employment of Mrs. Wildberger's money in the purchase—one that can be proved by parol—and that this case resembles *Siemon* v. *Schurck*, (29 *N. Y. Rep.* 598.) This is erroneous. The cases of resulting trusts, arising from the employment of money of one person, the deed being taken in the name of another, are divided into three classes, though, properly, only belonging to one. (*Getman* v. *Getman*, 1 *Barb. Ch.* 499.) First. Where the *cestui que trust* actually pays the money himself. (4 *Kent's Com.* 305, 306. 2 *Washburn, R. P.* 175. 2 *Wend.* 573.

3 *John.* 222. 5 *John. Ch.* 1. *Boyd* v. *McLean*, 1 *id.* 582. *Hill on Trustees, p.* 92. *Lewin on Trustees, 5th ed.* 1867, *p.* 132.) Second. Where it has been advanced to him, as a loan, by the person taking the conveyance. (*Getman* v. *Getman, supra. Boyd* v. *McLean, supra.*) Third. Where it has been advanced to him, as a gift, by a third person. (*Getman* v. *Getman, supra. Siemon* v. *Schurck*, 29 *N. Y. Rep.* 599.) In fact, all these cases resolve themselves into one, that of the *cestui que trust* paying the consideration, either directly or indirectly, by receiving it as a loan or a gift. (*Siemon* v. *Schurck*, 29 *id.* 615.) This case comes under neither of these classes. The plaintiffs did not pay the money themselves. It was not a loan to them, nor an advance to them, nor a gift. It was intended as a payment, to pay a debt which Mrs. Wildberger owed to the children, as guardian, and did not create a resulting trust. If the house had burned down, the debt would still be owing. It did not pay the debt; the *cestui que trust* did not acquire an ownership, as in case of a loan or gift of money. No case in England, or this country, can be found which even hints at a resulting trust in such a case. The only case allowing a resulting trust to a person, other than the one actually paying down the consideration money, is *Siemon* v. *Schurck*, (*Id.* 598,) and that was on the theory that the money belonged to the *cestui que trust*, being a gift from her father and mother, vesting in, becoming hers by the gift. Besides, the case was covered by the Revised Statutes, the trustee having taken an absolute deed without the knowledge or consent of the person paying the consideration, and was one of peculiar equities. The case of *Boyd* v. *McLean*, (1 *John. Ch.* 582,) cited by Judge EMOTT, in support of his opinion, in *Sieman* v. *Austin*, (33 *Barb.* 15,) was a trust resulting to the person paying the consideration, and not, as he mistakenly says, to a third person. In that case, Chancellor Kent examines all the English and American decisions, and, against his

own judgment, settled the doctrine, on authority, that a resulting trust can be proved by parol. But he never hints at any other resulting trust, than one resulting to the person paying the consideration. To call any thing else a resulting trust, is a misnomer. Such a trust, for a third person, is one arising *ex contractu,* and was exactly what the statute of frauds was designed to meet. (*Botsford* v. *Burr,* 2 *John. Ch.* 409.) In this state it can be created or declared only by deed or conveyance in writing. This is an express trust, (*Story on Eq.* 980;) it is not proved by writing, and, if it were proved by the evidence of the agreement, then the case comes within the provision of the Revised Statutes. " That where an express trust is created, but is not contained or declared in the conveyance to the trustee, such conveyance shall be deemed absolute as against the subsequent creditors of the trustees not having notice of the trust." (§ 83, *vol.* 3, *p.* 21, *5th ed.*)

VIII. The plaintiffs are precluded from asserting any claim to this property, by the action of Mrs. Wildberger, executrix and guardian. She permitted Wildberger to purchase this property, and take the absolute title in himself. She had knowledge of it, as all the evidence shows. She joined him, in a mortgage of the premises, a year and a half after the purchase. She has allowed him to hold himself out as the owner, obtain credit upon it, so that she would be estopped, if the plaintiff, in this action. The plaintiffs are in no better position. (*Wych* v. *East Ludia Co.,* 3 *P. Wms.* 309. *Lewin on Trusts,* 24 *Law Library,* 607, *&c.*; 97 *id.* 719.) " As the trustee cannot prejudice the *cestui que trust,* by doing what his trust does not authorize, so he cannot, in general, injure him by omitting to do what his office requires him to perform. The exception to the rule is in the case of a purchaser or creditor. (1 *Saunders on Uses and Trusts,* 415. *Wills on Trustees,* 10 *Law Library,* 185, *note.*)

IX. The case of *Siemon* v. *Schurck*, (29 *N. Y. Rep.* 598,) relied on by the plaintiffs as a controlling authority, is, by implication, conclusive in favor of the defendants. The differences between the facts, and the stress laid by the court on these points in which the cases differ, are fatal to the plaintiffs. The case of *Lounsbury* v. *Purdy*, (18 *id.* 515,) is something like *Siemon* v. *Schurck*, except that the *cestui que trust* paid the consideration money. Her brother, the trustee, advanced some of it, but on the understanding that it should be repaid by the plaintiff. It involved fraud. The case of *Day* v. *Roth*, (*Id.* 448,) was one of fraud in taking the conveyance.

X. Costs should not have been awarded against the defendants. In equity actions, costs are in the discretion of the court, but it is a reasonable, just discretion. The defendants claimed only $6500, and by no rule could $500 be awarded against them as an extra allowance. (*Pendleton* v. *Eaton*, 3 *John. Ch.* 69. *Tabele* v. *Tabele*, 1 *id.* 45. *Murray* v. *Ballou*, &c. *Id.* 567.)

XI. The judgment should be reversed, and either judgment should be given for the defendants Corson and Shields, with costs, from the fund, or the property should be decreed sold, and the lien of the plaintiffs, with interest, discharged, allowing for the deductions specified in the second point, and then the payment of the defendants' debt decreed from the balance, with costs.

*Thos. Darlington*, for the respondents. I. The defendants Corson and Shields, being judgment creditors, have no interest or rights in the property in question, which their debtor, Wildberger, did not have at the time when the judgment was docketed. It is elementary that the lien of a judgment is postponed to all prior equities existing against the judgment debtor. If the plaintiffs could have compelled a conveyance from Wildberger of the whole premises to themselves, prior to Corson and Shields' judgment, they can

Schlaefer *v.* Corson.

now compel such a conveyance, free from the lien of such judgment. (2 *Story's Eq. Jur.* § 977. *White* v. *Carpenter*, 2 *Paige*, 217. *Matter of Howe*, 1 *id.* 125. *Buchan* v. *Sumner*, 2 *Barb. Ch.* 165, 207. *Mower* v. *Kip*, 6 *Paige*, 88. *Kiersted* v. *Avery*, 4 *Paige*, 9.)

II. Wildberger has never had a scintilla of interest in the premises in question. 1. The whole purchase money for the property was derived from the rents belonging to the infant plaintiffs—part paid down at the time of the purchase, and part advanced by a third party, and possibly by the infants' mother at that time, and subsequently repaid from the rents. Wildberger himself neither paid nor advanced a penny of the consideration. 2. Between the infants and Wildberger (and consequently between the infants and the defendants Corson and Shields,) it is even immaterial whether the house was paid for with their money or not. If the whole of it had been paid by their mother, or any other person, the result would be the same. Wildberger did not pay for it. He took the deed in his own name, with the understanding and agreement between himself and their guardian that the purchase was for their benefit. This understanding and agreement creates an equity in favor of the infants superior to any claims of Wildberger's creditors. The defendants' counsel misapprehends the source of the infants' title, and argues as if it arose solely from the fact that their money was applied to the purchase. Every dollar of the purchase money was paid with their money, it is true, but the intention and agreement to give them the benefit of the purchase, which is disputed by no one, and not denied by Wildberger himself, is all that is necessary in order to support their case. This point is fully sustained by the strongest authorities. (*Lounsbury* v. *Purdy*, 18 *N. Y. Rep.* 515. *Sieman* v. *Austin*, 33 *Barb.* 9. *Sieman* v. *Schurk*, 29 *N. Y. Rep.* 598, *affirming same case. White* v. *Carpenter*, 2 *Paige*,

217. *Buchan* v. *Sumner*, 2 *Barb. Ch.* 165. 6 *Paige*, 88. 11 *id.* 570.) In *Lounsbury* v. *Purdy*, (18 *N. Y. Rep.* 515,) a brother took a deed in his own name of the property intended for his sister, the plaintiff. She paid $100 of the purchase money, and the brother gave his note for the remainder, after deducting a mortgage. This note was afterwards paid by the plaintiff from her share in her father's estate. Her lien was held superior to that of the judgment creditors of her brother. *Sieman* v. *Austin*, (33 *Barb.* 7, *affirmed in Court of Appeals*, 29 *N. Y. Rep.* 598,) is precisely in point. A piece of property was conveyed to one Youngs by an absolute deed, with the verbal understanding between Youngs and the plaintiff's parents that it should be held for the benefit of the plaintiff, then an infant. The money paid belonged to the plaintiff's mother. It was held that Youngs' judgment creditors, subsequent or otherwise, obtained no lien upon the land. The infants, therefore, are entitled, in this case, to a conveyance of the whole premises from Wildberger. They were so entitled long before the Corson and Shields judgment, or even the debt upon which it was founded, and are consequently entitled to such a conveyance relieved of any claim under such judgment.

III. As against the infant plaintiffs, Corson & Shields have, legally speaking, no equity whatever. 1. It was the money of the infants that was agreed to be used, and was used, in the purchase of the premises. Except for the accident that a renewal of the mortgage had to be executed, the deed would have then been taken in their names. At the time of the purchase, the eldest of the two plaintiffs had just attained her fifteenth birthday; the other was not yet thirteen years old. Their advantages in the way of education were small; their improvement of those advantages still more limited. The pretense that this debt was allowed to be contracted on their representations of Wildberger's means is absurd. The defendants

Schlaefer *v.* Corson.

Corson and Shields had been dealing largely with Wildberger for years, and a remark of a boy of fourteen, after the debt was contracted, that he did not know who owned the house, (which was doubtless the truth,) a lamentable failure in making out an estoppel. 2. The defendants Corson and Shields confound a possible hardship to themselves with an equity, in the legal sense, against the plaintiffs. It does not even appear that these defendants will suffer a hardship.. Wildberger has, during the whole period, owned a stand, which the defendants' counsel claims to be worth $2000. No satisfactory reason is given why that has not been applied to this debt. The defendants' judgment is a lien upon all Wildberger's property for the next ten years; and even if part of the debt is lost, the defendants will be in no worse position than if Wildberger had actually owned the property, and then, as he had a perfect right to do, sold it, after procuring credit and before the judgment, and invested the proceeds in Mexican bonds or oil stocks, or any securities of that description, readily obtainable from brokers. It is urged that the infants have yet a large property left. The property of Messrs. Corson & Shields is probably larger; but even if it is not, that is no reason why the infants should pay debts for which they are not responsible.

IV. Even if the defendants Corson and Shields had an equity, that of the infants would be superior. 1. The rights of the infants were fixed prior to the 1st of January, 1865. Their equity was then complete, and they were entitled to a conveyance of the whole property. If they had then brought suit they would have obtained a decree for such conveyance, but at that time Corson and Shield's debt was not contracted (even disregarding the subsequent judgment.) Wildberger then owed the latter nothing. Any equity which Messrs. Corson and Shields have, therefore, must arise subsequent to and consequently subservient to that of these infant plaintiffs. They can acquire

no rights against the infants which they did not have then. If they had an equity equal in other respects to that of the infants, the infants' equity is prior, and, under the familiar maxim of chancery jurisprudence, must prevail.

*By the Court,* MULLIN, J. The mother of the plaintiffs was entitled, by the will of her first husband, to the income of his estate until she should again marry, and upon the happening of that event the whole estate vested in the plaintiffs, subject to the widow's right of dower. After the mother's marriage to Wildberger she permitted him to collect the rents belonging to the plaintiffs. Part of these ($1500) he deposited in bank, and the balance he used in his business. By an arrangement between the mother, acting as guardian of the plaintiffs, and Wildberger, he was to purchase the premises in question for the plaintiffs and pay towards the same the sum of $4700, of the moneys of the children in his hands and assume the payment of a mortgage of $10,000 then on the premises. After consultation with Cook, an attorney of this court, as to the propriety of the investment, the purchase was made, and title taken by Wildberger, for the benefit of the plaintiffs.

On these facts, the first question is, was there a resulting trust in favor of the plaintiffs? It is quite clear that all the money that was paid for the land belonged to the children; the purchase, by agreement with the guardian, was to be for them. If the whole purchase money had been paid by them under these circumstances, it could not be seriously claimed that there would not be a trust resulting in their favor. But the purchase was subject to a mortgage. Whether Wildberger covenanted to pay it as part of the price, we do not know. If not, and I think we must presume that he did not, in the absence of evidence on the subject, then the whole price was paid out of the plaintiffs' money, or charged on their land.

It is insisted, however, that the money of the children was in the mother's hands as guardian, and that she, and not Wildberger, is indebted to them for the rents received by the latter after the marriage. He received them as agent of his wife; he conceded he held the money for them. He was, therefore, their trustee, and the children might follow the fund into his hands, and into any property in which he might invest. He did not have this money of his wife; he collected it for her as her agent; and although the guardian may be still liable, Wildberger is liable also.

There is no doubt, upon the evidence, as to Wildberger's insolvency. It does not lie with his creditors to say that the premises should be appropriated to pay their debts, because the mother is liable as guardian.

The equity of the children is the oldest, and superior to that of a mere judgment creditor, who takes his judgment as a means to obtain payment of a debt, and not by way of security for advances made upon the faith of the judgment as security.

I think the judgment should be affirmed, with costs.

[NEW YORK GENERAL TERM, November 2, 1868. *Ingraham, Peckham* and *Mullin,* Justices.]